United States Court of Appeals,

Eleventh Circuit.

No. 94-5183.

UNITED STATES of America, Plaintiff-Appellant,

v.

Michael D. FOXMAN, Defendant-Appellee.

July 11, 1996.

Appeal from the United States District Court for the Southern District of Florida. (No. 87-6034-CR-WMH), William Hoeveler, Judge.

Before EDMONDSON, Circuit Judge, and FAY and GIBSON[*], Senior Circuit Judges.

EDMONDSON, Circuit Judge:

Today we deal with one aspect of Sunrise Savings & Loan Association's failure: the indictment of former Sunrise chairman Michael Foxman. Foxman, who left Sunrise in 1983, was indicted with several of his former colleagues in 1993. Before trial, the district judge dismissed the single count against Foxman. The judge concluded that the indictment was for too long delayed. We remand for application of the established legal standard to the pre-indictment delay claim. We also remand for further examination of Foxman's duplicity argument, which was raised below but was not the basis for the dismissal of the indictment.

I.

Michael Foxman and other members of a Philadelphia-based law firm formed Sunrise in 1979. Foxman was installed as Chairman, and he selected Robert Jacoby to be president. Sunrise almost

---

[*]Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

immediately embarked on certain courses of conduct which led to the thrift's insolvency and to criminal charges (as well as civil suits) against Sunrise's officers, lawyers and biggest borrowers.

The government says that Michael Foxman was involved in a conspiracy to misapply Sunrise funds. The conspiracy is said to have started with the diversion of money from Sunrise to Crusader (a Pennsylvania savings and loan) and continued with a plan to evade federal loans-to-one-borrower regulations. The loans-to-one-borrower violations involved Sunrise's biggest customers, William Frederickand Thomas Moye—large scale developers and profligate spenders of borrowed money. (Persons concerned about Frederick and Moye's relationship with Sunrise should see the related case of *U.S. v. Jacoby,* 955 F.2d 1527 (11th Cir.1992).) Foxman resigned as Chairman in 1983; he was not thereafter involved in Sunrise's day-to-day operations.

Sunrise became insolvent in 1985. Regulators took over, and a grand jury began investigating. In 1987, Frederick, Moye and three former Sunrise officers (including Jacoby) were indicted. Before trial, Frederick and Moye pleaded guilty. At trial, Jacoby and another officer were convicted; and we affirmed their convictions. *See id.* Then, the government granted Jacoby immunity to force him to testify before the grand jury. In 1992, Jacoby told the jury about the Crusader diversions. The government, which had been investigating Sunrise for years, says this testimony was the first link between Foxman and misuse of Sunrise funds.

In 1993, Foxman and four others were charged in a superseding multi-count indictment. Count I, the only one implicating Foxman,

charged a *single* conspiracy composed of *both* the Crusader diversion and the Frederick and Moye dealings. Foxman was charged with no substantive counts because he left Sunrise before the Frederick and Moye dealings and because prosecutions based directly on the Crusader diversions became time barred back in 1988.

After hearing argument and receiving proffers from the lawyers, the district judge—who had also presided over the Jacoby trial—dismissed the indictment against Foxman because of pre-indictment delay. The district judge also discussed Foxman's argument that Count I was duplicitous: two separate conspiracies were misjoined in a single count so as to come within the statute of limitations.

## II.

For purposes of this appeal, we assume that the Crusader diversion and the loans-to-one-borrower matter could have been proved to have been parts of a single conspiracy.[1] So, we will not discuss in detail Foxman's argument that the indictment should be

---

[1]For an example of the government's charging conspiracy where the statute of limitations barred substantive charges, see *U.S. v. Benson* 846 F.2d 1338, 1340 (11th Cir.1988) (discussing no duplicity claim).

Foxman's co-indictees went to trial and were convicted of the Count I conspiracy. But, the district judge entered a verdict of acquittal on Count I, concluding no reasonable juror could find that the Crusader diversions and the Frederick and Moye transactions were part of the same conspiracy. This determination is being appealed by the government in No. 96-4319, but the propriety of that ruling is not before us now.

In this matter involving Foxman, the district judge—although expressing support for Foxman's argument—did not rely on the duplicity point. On remand, we instruct the district judge to permit further development of the record and to revisit this issue.

dismissed as duplicitous; and, the only issue we face is whether the indictment of Foxman was lawfully dismissed on the ground of delay. We review the dismissal of the indictment for an abuse of discretion. *See U.S. v. Dyal,* 868 F.2d 424, 429-30 (11th Cir.1989). But, the defendant bears a heavy burden in showing a dismissal is appropriate. *See U.S. v. Huntley,* 976 F.2d 1287, 1290 (9th Cir.1992).

The limit on pre-indictment delay is usually set by the statute of limitations. But, the Due Process Clause can bar an indictment even when the indictment is brought within the limitation period. *See generally U.S. v. Marion,* 404 U.S. 307, 323-27, 92 S.Ct. 455, 465-66, 30 L.Ed.2d 468 (1971) and *U.S. v. Lovasco,* 431 U.S. 783, 788-91, 97 S.Ct. 2044, 2048-49, 52 L.Ed.2d 752 (1977). Under *Lovasco* and *Marion* and our applications of these cases, *see, e.g., U.S. v. Hayes,* 40 F.3d 362, 365 (11th Cir.1994); *U.S. v. Benson,* 846 F.2d 1338, 1340 (11th Cir.1988); and *Stoner v. Graddick,* 751 F.2d 1535, 1541 (11th Cir.1985), for this dismissal to have been proper, Foxman must have shown that pre-indictment delay caused him actual substantial prejudice and that the delay was the product of a deliberate act by the government designed to gain a tactical advantage.

But, the district judge did not apply both parts of this two-part test because he concluded that *Doggett v. U.S.,* 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), altered the due process analysis and permitted the dismissal of the indictment whether or not the delay was the product of a deliberate act by the government designed to gain a tactical advantage. *Doggett,*

however, is a Sixth Amendment case, and we agree with the Ninth Circuit, *see U.S. v. Bischel,* 61 F.3d 1429, 1436 (9th Cir.1995), that *Doggett* does not alter the law governing due process challenges to pre-indictment delay.

For due process to have required dismissal, the delay must have resulted in actual substantial prejudice to Foxman. We read the order of the district court to say that he found that actual substantial prejudice existed. An abuse of discretion exists on this point only if this finding is clearly erroneous. *U.S. v. Huntley,* 976 F.2d 1287, 1290 (9th Cir.1992). Given the number of Foxman's best witnesses who died between 1983 and 1993 (and that the statute of limitations for substantive charges against Foxman expired in 1988), we cannot say the district judge was clearly wrong. *See U.S. v. Mills,* 704 F.2d 1553, 1557 (11th Cir.1983) (death of witness can lead to substantial prejudice). Most of the evidence in the case against Foxman was to be testimonial. And, Foxman—unlike other defendants—was not under active investigation in the 1980's; therefore he had little incentive to preserve evidence.

But, substantial prejudice from delay, standing alone, does not violate due process. *See id.* The delay must also be the product of a deliberate act by the government designed to gain a tactical advantage. Our review of the record suggests support exists for a finding that at least part of the delay in this case is of this kind.[2] The government believed that Jacoby would

---

[2]We have said that delay which is the product of "bad faith" government acts will satisfy this test. *See Stoner,* 751 F.2d at 1541 (but also alternatively holding that defendant suffered

implicate others when he was forced to testify;  and the government

waited until Jacoby's own convictions were affirmed to immunize

him.  This decision delayed the indictment of Foxman.  And, this

delay might be the product of prosecutorial conduct designed to

---

insufficient prejudice from delay);  *Benson,* 846 F.2d at 1343
(but also observing that prejudice in case "does not rise to
constitutional proportions").  In context, we think those cases
used the words "bad faith" to mean that the government acted to
delay an indictment, hoping that the delay—in and of itself—would
prejudice the defense.  In "bad faith" cases, the government
intentionally acts to delay;  and the tactical advantage sought
*is* the prejudice to the defendant which the government
anticipates will flow from the delay.

> But, bad faith in this sense or in the sense of a
> subjective sinister motive is not critical to a due process
> violation for preindictment delay.  The critical element is
> that the government makes a judgment about how it can best
> proceed with litigation to gain an advantage over the
> defendant and, as a result of that judgment, an indictment
> is delayed.  Then, the question becomes whether that delay
> caused the defendant actual substantial prejudice.

> The government, as litigating party, might pursue
> tactical advantages other than prejudice directly caused by
> delay.  We think intentional government acts designed to
> obtain a tactical advantage which only *incidentally* cause
> delay have never been ruled out as a potential basis for due
> process violations.  The main point is showing acts done
> intentionally in pursuit of a particular tactical advantage:
> delay (and the prejudice directly caused by the delay) need
> not necessarily be the tactical advantage sought.

> We also observe that many delays in obtaining an
> indictment would not be "tactical"—a word which we think
> inherently includes the concept of intentionally maneuvering
> for an advantage at trial.  For example, not every delay
> which is the result of a need for further investigation
> gives rise to a due process violation.  *Hayes,* 40 F.3d at
> 365.  (But where an investigation is itself delayed by the
> government for tactical reasons, the fact that an
> investigation was involved might be no bar to a due process
> violation.)  And, some delays are not the product of
> "deliberate action by the government."  For example, where
> the record shows no reason for the delay (or where delay is
> due to simple negligence), no due process violation exists.
> *See Stoner,* 751 F.2d at 1543 and *Benson,* 846 F.2d at 1342-
> 43.

obtain a tactical advantage: it seems the reason for the delay might have been the prosecutor's belief that Jacoby would be a better witness against those he implicated once his convictions were affirmed.[3] If this motivation was the reason for the delay, the litigation strategy (that is, the pursuit of the advantage of Jacoby having already been finally convicted) seems to have inherently involved the risk that Jacoby—when he ultimately was immunized after his appeal—would reveal misdeeds prior in time to those the government anticipated Jacoby would reveal. We would have little difficulty in permitting the foreseeable consequences of a deliberately chosen litigation strategy to be visited upon the government.

But, a problem exists with our concluding that the government delayed the indictment to gain a tactical advantage over Foxman. The government tells us that the first evidence against Foxman was Jacoby's testimony. If this representation is true, we cannot say as a matter of law that this fact would necessarily prevent the conclusion that the government intentionally acted to obtain a tactical advantage over Foxman. But, it would mean that we would need detailed findings in support of such a conclusion. Facts which might be important to determining whether the government intentionally acted to gain a tactical advantage over Foxman could be whether the government had some reason to believe Foxman would be implicated by Jacoby regardless of when he was immunized or even

---

[3]We also note that the district judge in this case is familiar with all the Sunrise prosecutions and has remarked on certain "excesses" or "unchecked enthusiasm" on the part of the government.

if he was not immunized. Another factor might be whether the government was "willfully blind" to Foxman's involvement before they heard from Jacoby. Also important could be whether a government trial strategy was designed to obtain a tactical advantage over all persons Jacoby implicated, with Foxman simply being one of those persons. Findings about delays due to intentional acts to obtain a tactical advantage other than the act of waiting to immunize Jacoby could also be important. We need a more detailed record and more detailed findings.[4]

Here, the district judge relied on *Doggett*; he made no findings about the reasons for the delay. Because of this circumstance, we think we must vacate the order of dismissal and remand this case. The parties need to create a record which would enable the district judge to determine what, if any, delay was the product of deliberate acts by the government to gain a tactical advantage over Foxman. And, the district court must determine whether this delay caused Foxman actual substantial prejudice. We also believe that the duplicity of Count I remains in issue; so, as discussed in note 1, we also instruct that the duplicity issue be revisited by the district judge and the parties.

VACATED and REMANDED.

---

[4]We also observe that dismissing an indictment under the Due Process Clause for pre-indictment delay is rare. In fact, so far as we can tell, we have never concluded that such a dismissal was appropriate. We are not surprised by this—the statute of limitations protects defendants in almost every case. But, on the record before us now, we think it might be that the limitations period has failed to protect Foxman from an indictment which never should have issued. But, before we would affirm such a determination, we would need detailed findings supported by a well-developed record.