[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 18, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-11556
Non-Argument Calendar
_____

D. C. Docket No. 05-20140-CR-CMA

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHNNY LEWIS LAMB,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(January 18, 2007)**

Before WILSON, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Johnny Lewis Lamb appeals his convictions and sentences for various

narcotics and firearms offenses on the grounds that (1) the district court abused its discretion by failing to dismiss the indictment for pre-indictment delay; (2) the post-indictment delay violated his right to a speedy trial under the Speedy Trial Act and the Sixth Amendment; (3) the district court abused its discretion by allowing the introduction of certain "extrinsic act" evidence; and (4) his sentence should be vacated due to an erroneous career offender enhancement and because the sentence is unreasonable. For the reasons that follow, we affirm.

## I. BACKGROUND

On March 2, 2000, based on tip from a confidential informant, Miami Dade Police officers searched a Miami residence suspected of being used as a "stash house" for narcotics. The search resulted in the seizure of, *inter alia*, fourteen firearms, one kilogram of powder cocaine, two-and-one-half pounds of marijuana, narcotics packaging, and scales. In the bedroom, officers found a receipt for cellular phone service containing Lamb's name, a picture of Lamb standing next to a vehicle in front of the premises, a martial arts certificate bearing Lamb's name hanging on the wall, and thirty utility bills for the residence in Lamb's name.

On February of 2005, a federal grand jury in the Southern District of Florida returned an indictment charging Lamb with various narcotics and firearms offenses, and a warrant was issued for Lamb's arrest. Specifically, the indictment

2

charged Lamb with: possession of firearms by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 1); possession with intent to distribute five hundred or more grams of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii) (Count 2); possession with intent to distribute less than fifty kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D) (Count 3); and possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(I) (Count 4).

On March 11, 2005, a notice was entered deeming Lamb a fugitive from justice.[1] On June 16, 2005, Lamb was arrested on the charges stemming from the drugs and firearms seized in 2000. During the arrest, Lamb consented to a search of his apartment. Prior to the search, Lamb alerted officers that marijuana and cocaine could be found on his night stand, and, during the search, officers found marijuana, powder cocaine, crack cocaine, elastics, plastic baggies, a razor blade, and cutting agents.

Lamb made his first appearance before a magistrate judge on June 17, 2005, and on June 22, 2005, he was arraigned. On June 24, 2005, the district court entered an order setting the trial date for the two-week period commencing on August 8, 2005. On July 28, 2005, Lamb filed a motion to continue his trial on the

---

[1] The record provides no insight into why Lamb was deemed a fugitive.

charges stemming from the 2000 incident for thirty days. In an order filed on August 3, 2005, the court granted the motion, and the trial was set to commence during the two-week period beginning September 6, 2005.

On August 30, 2005, a grand jury returned a superceding indictment adding four additional counts based on the items found in Lamb's residence on June 16, 2005. The superceding indictment added the following charges: possession with intent to distribute five grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii) (Count 5); possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D) (Count 6); possession with intent to distribute less than fifty kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D) (Count 7); and renting an apartment for purposes of manufacturing, storing, distributing, and using controlled substances, in violation of 21 U.S.C. § 856(a)(2) (Count 8). On September 2, 2005, a grand jury returned a second superceding indictment amending Count 5 to charge an offense involving less than five grams of crack cocaine.

On September 12, 2005, Lamb filed a motion to dismiss the indictment due to pre-indictment delay and to sever the counts pertaining to his 2000 conduct from the counts pertaining to his 2005 conduct (if the dismissal was not granted). The district court conducted a hearing on the motion on September 16, 2005. During

the hearing, the Government told the court that if severance were granted, it wished to try the 2000 case first. The Government also argued that evidence pertaining to Lamb's 2005 arrest should be admissible in a trial of the 2000 offenses under Federal Rule of Evidence 404(b). Lamb's counsel argued that the defense needed additional time to locate witnesses and that he would be on leave during the next several days. The court granted Lamb's motion for severance, agreed with the Government's contention that evidence pertaining to Lamb's 2005 arrest should be admissible in a trial of the 2000 offenses, and denied Lamb's request to dismiss the indictment.

In an order filed on September 21, 2005, the district court granted Lamb another continuance, setting a trial date for the period beginning on October 31, 2005. On October 20, 2005, and November 22, 2005, Lamb made two additional motions to continue the trial on the grounds that he needed more time to locate defense witnesses. The district court granted both motions.

Lamb's trial commenced on December 13, 2005, and the jury found him guilty on all four counts stemming from his 2000 conduct. After Lamb's conviction, he pleaded guilty, without a plea agreement, to Count 5 of the superceding indictment (which charged him with possession with intent to distribute crack cocaine on June 16, 2005) in exchange for the Government's

agreement to dismiss Counts 6, 7, and 8. Following a sentencing hearing, Lamb was sentenced to 181 months imprisonment and six years of supervised release. Lamb timely filed this appeal.

## II. STANDARDS OF REVIEW

A district court's decision to deny a motion to dismiss an indictment for pre-indictment delay is reviewed for abuse of discretion. United States v. Foxman, 87 F.3d 1220, 1222 (11th Cir. 1996). A district court's evidentiary rulings are also reviewed for abuse of discretion. Chrysler Int'l Corp. v. Chemaly, 280 F.3d 1358, 1360 (11th Cir. 2002).

"Determination of whether a defendant's constitutional right to a speedy trial has been violated is a mixed question of law and fact. Questions of law are reviewed de novo, and findings of fact are reviewed under the clearly erroneous standard." United States v. Ingram, 446 F.3d 1332, 1336 (11th Cir. 2006) (citations omitted). And under the Speedy Trial Act, we review conclusions of law de novo, United States v. Brown, 285 F.3d 959, 961 (11th Cir. 2002), and the district court's factual determinations for clear error. United States v. McCutcheon, 86 F.3d 187, 190 (11th Cir. 1996).

We review a defendant's ultimate sentence for reasonableness in light of the factors set forth in 18 U.S.C. § 3553(a). United States v. Williams, 435 F.3d 1350,

1353 (11th Cir. 2006).

Errors raised for the first time on appeal, however, are reviewed for plain error. United States v. Dowling, 403 F.3d 1242, 1249 (11th Cir. 2005).

### III.  ANALYSIS

### A.  Pre-indictment Delay

Lamb argues that the approximately five-year delay between the crimes of conviction and his indictment violated his due process rights and that the district court abused its discretion in denying his motion to dismiss the indictment on this basis.[2]  Although the limit on pre-indictment delay is usually set by the statute of limitations, the Due Process Clause can bar an indictment even when the indictment is brought within the limitation period. Foxman, 87 F.3d at 1222.  "To prove a due process violation resulting from a pre-indictment delay, [a defendant] must show:  (1) actual prejudice to [his] defense from the delay; *and* (2) that the delay resulted from a deliberate design by the government to gain a tactical advantage." United States v. Thomas, 62 F.3d 1332, 1339 (11th Cir. 1995) (emphasis added).  This court has held that when the delay was the result of pure

---

[2] To the extent Lamb argues that the pre-indictment delay, in and of itself, violated the Speedy Trial Act and the Sixth Amendment's guarantee of a speedy trial, his contention is without merit.  The protections of the Speedy Trial Act do not apply until formal federal charges are pending, United States v. Sanchez, 722 F.2d 1501, 1509 (11th Cir. 1984), and the Sixth Amendment right to a speedy trial does not arise until a defendant is accused or arrested. United States v. Derose, 74 F.3d 1177, 1185 (11th Cir. 1996).

7

negligence on the part of the government, "the delay cannot be attributed toward the government's deliberate attempt to gain an advantage," and thus, there is no due process violation. United States v. Benson, 846 F.2d 1338, 1343 (11th Cir. 1988).

Here, Lamb asserts that there is no evidence that the Government either diligently pursued an indictment or engaged in an ongoing investigation during the five years between March 2, 2000 (when the narcotics and firearms were found) and February 18, 2005 (when he was initially indicted). He also argues that, at the very least, remand is warranted to develop a more detailed record regarding the Government's reasons for the delayed indictment.

The record is devoid of any evidence that the Government delayed in indicting Lamb to gain a tactical advantage. Indeed, the only record evidence as to the reasons for the delay arises from the hearing on Lamb's motion to dismiss, wherein the prosecutor asserted that a "small part" of the delay was produced by the Government's efforts to find witnesses and that the rest of the delay was due to the Government's negligence. Because Lamb failed to present evidence to the contrary, we agree with the district court's determination that the delay was not the product of intentional government acts designed to obtain a tactical advantage. Accordingly, we need not reach the question of whether the delay caused Lamb

8

substantial prejudice. See Foxman, 87 F.3d at 1223 ("[S]ubstantial prejudice from delay, standing alone, does not violate due process."). Accordingly, we affirm the district court's denial of Lamb's motion to dismiss for pre-indictment delay.

## B. Post-indictment Delay

### 1. The Speedy Trial Act

Lamb argues that the delay between his indictment and his trial violated his right to a speedy trial under the Speedy Trial Act, 18 U.S.C. §§ 3161-3174. The Speedy Trial Act provides that a defendant must be tried within seventy days from the filing of his indictment or information, or from the date on which he made his first appearance before the court. 18 U.S.C. § 3161(c)(1). If the defendant is not tried within the seventy-day time limit, the court must dismiss the indictment. 18 U.S.C. § 3161(a)(2). "The defendant must request this relief, however, and '[f]ailure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section.'" United States v. Register, 182 F.3d 820, 828 (11th Cir. 1999) (quoting 18 U.S.C. § 3161(a)(2)). And this court has refused to hear claims based on the Speedy Trial Act that were not raised in the district court. See e.g., id. at 828; United States v. Stitzer, 785 F.2d 1506, 1520 (11th Cir. 1986); United States v. Tenorio-Angel, 756 F.2d 1505, 1508 (11th Cir. 1985).

Here, Lamb never moved for dismissal under the Speedy Trial Act, and he never made a formal demand for a speedy trial. Thus, we conclude that Lamb has waived his right to the sanction of dismissal under the Act, and we need not reach the issue of whether a violation of the Act occurred.

## 2. Sixth Amendment Right to a Speedy Trial

Lamb also argues that the post-indictment delay violated his Sixth Amendment right to a speedy trial. Because Lamb raises this constitutional claim for the first time on appeal, we review it for plain error only. United States v. Hayes, 40 F.3d 362, 364 (11th Cir. 1994).

The Supreme Court has established a four-factor test (the "Barker factors") to determine whether a defendant has been deprived of his constitutional right to a speedy trial: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) the actual prejudice to the defendant. Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 2182, 33 L.Ed.2d 101 (1972). The first factor serves a triggering function; unless the length of the delay is presumptively prejudicial, we need not consider the remaining factors. Register, 182 F.3d at 827. A delay is considered "presumptively prejudicial" as it approaches one year. United States v. Dunn, 345 F.3d 1285, 1296 (11th Cir. 2003) (citations omitted). "If, after the threshold inquiry is satisfied and the second and

third factor are considered, all three of these factors weigh heavily against the Government, the defendant need not show actual prejudice (the fourth factor) to succeed in showing a violation of his right to a speedy trial." Ingram, 446 F.3d at 1336 (citation omitted).

In determining whether a delay is presumptively prejudicial, this court has measured the length of the delay from the date of indictment to the date of trial. See, e.g., id. at 1336-37; Dunn, 345 F.3d at 1296; United States v. Schlei, 122 F.3d 944, 987 (11th Cir. 1997); United States v. Twitty, 107 F.3d 1482, 1490 (11th Cir. 1997); Hayes, 40 F.3d at 365. Here, Lamb was initially indicted for the 2000 incident on February 18, 2005. His trial commenced on December 13, 2005. This delay of ten months was approaching one year and, thus, was arguably "presumptively prejudicial." See Dunn, 345 F.3d at 1296. Accordingly, we proceed to consider the remaining Barker factors.

As for the second factor, the reason for the delay, the record is unclear. For example, the record provides no insight into the reasons for the delay between Lamb's initial *indictment* on February 18, 2005 and his *arrest* on June 17, 2005.[3]

---

[3] Nothing in the record explains why Lamb was deemed a fugitive on March 11, 2005, or why Lamb was not arrested until June 17, 2005. Indeed, Lamb asserts that throughout the pre- and post-indictment period, he continued to live in the vicinity of the address where the drugs and firearms were seized in 2000, and he claims he had worked at the local Humane Society since 2001.

11

Yet the record does establish that Lamb's multiple requests for continuances produced the delay between his *arrest* and his *trial*. Although his trial date was initially set for the two-week period commencing on August 8, 2005, Lamb moved for, and was granted, *four* continuances. Nonetheless, the record also shows that Lamb requested those continuances in order to obtain more time to locate defense witnesses—time he likely would not have needed absent the five-year *pre*-indictment delay, for which, as discussed above, he was not at fault. Thus, the second Barker factor *arguably* weighs *against* the Government.

As for the third Barker factor, Lamb did not move to dismiss the indictment on constitutional speedy trial grounds, and he did not make a demand for a speedy trial. Thus, the third Barker factor does not weigh against the Government.

Because the first three Barker factors do not uniformly weigh heavily against the Government, Lamb must demonstrate *actual prejudice* from the delay, "which he may do in one of three ways: (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused, and (3) possibility that the accused's defense will be impaired." Dunn, 345 F.3d at 1296 (citations omitted).

During the hearing on Lamb's motion to dismiss for *pre*-indictment delay, the district court determined that based on evidence of Lamb's unsuccessful efforts to locate defense witnesses, the five-year pre-indictment delay caused actual

12

prejudice to his defense. Thus, Lamb contends that the ten-month *post*-indictment delay coupled with the approximately five-year *pre*-indictment delay caused him actual prejudice by impairing his defense. The Government counters that the pre-indictment delay is wholly irrelevant to the speedy trial analysis.

Although "[o]nly pretrial delay *following* a person's *arrest, charge, or indictment* is relevant to whether the Speedy Trial Clause of the Sixth Amendment is triggered[,] . . . . once the Sixth Amendment's speedy trial analysis is triggered, it is appropriate to consider inordinate *pre*-indictment delay in determining how heavily post-indictment delay weighs against the Government." Ingram, 446 F.3d at 1339 (citations omitted) (emphasis added). "Thus, the [ten-month] post-indictment delay in this case weighs more heavily than a [ten-month] delay in another case might if, in that case, the post-indictment delay began shortly after the allegedly criminal acts occurred." Id. But it does not follow that we analytically transfer the actual prejudice, *in toto*, from the *pre*-indictment delay to the *post*-indictment delay in our assessment of the fourth Barker factor.

Here, there is no evidence that the ten-month *post*-indictment delay, in and of itself, actually prejudiced Lamb.[4] Indeed, as discussed above, much of the post-indictment delay resulted from continuances granted, at Lamb's request, to *aid* his

---

[4] Lamb does not contend that the post-indictment delay, in and of itself, resulted in actual prejudice.

13

defense by giving him more time to locate defense witnesses. Thus, even weighing the post-indictment delay *more* heavily against the Government than we otherwise would in the absence of the *pre*-indictment delay, see id., we conclude that all four Barker factors, considered as a whole, do *not* weigh sufficiently against the Government to constitute a plain violation of the Sixth Amendment.

## C. Admission of Evidence Under Rule 404(b)

Lamb also argues that the district court erred in admitting extrinsic evidence of "other crimes" under Federal Rule of Evidence 404(b). Subject to specific exceptions, Rule 404(b) provides that extrinsic evidence of other crimes, wrongs, or acts is not admissible to prove a defendant's character in order to show action in conformity therewith.[5] At the outset, we note that the principles governing Rule 404(b) evidence "are the same whether the conduct occurs *before* or *after* the offense charged." United States v. Delgado, 56 F.3d 1357, 1365 (11th Cir. 1995) (citation omitted) (emphasis added); United States v. Jernigan, 341 F.3d 1273,

---

[5] The rule provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused the prosecution in a criminal case shall provide reasonable notice in advance of trial, . . . of the general nature of any such evidence it intends to introduce at trial.

Fed. R. Evid. 404(b).

1283-84 (11th Cir. 2003) ("[T]he standard for evaluating the admissibility of a *subsequent* bad act under Rule 404(b) is identical to that for determining whether a *prior* bad act should be admitted under this Rule." (emphasis added)). Thus, that the pertinent conduct occurred *after* the crimes charged against Lamb in this case does not change our analysis. Delgado, 56 F.3d at 1365.

In evaluating the admissibility of 404(b) extrinsic evidence, this Court must determine whether:

(1) the evidence is relevant to an issue other than defendant's character; (2) there is sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the extrinsic act; and (3) the evidence possesses probative value outweighing any prejudicial effect.

United States v. Clemons, 32 F.3d 1504, 1508 (11th Cir. 1994). Because Lamb raises this claim of evidentiary error for the first time on appeal, however, "we review it for plain error only." United States v. Baker, 432 F.3d 1189, 1202 (11th Cir. 2005) (citing Jernigan, 341 F.3d at 1280).

At Lamb's trial for the 2000 offenses, the Government introduced evidence that during his June 16, 2005 arrest, inside his apartment, police found 5.4 grams of marijuana, 2.7 grams of powder cocaine, 0.36 grams of crack cocaine, and an

15

array of other paraphernalia indicative of drug distribution. Lamb argues that because this evidence was seized approximately five years after the conduct for which he was being tried, the evidence was irrelevant and unduly prejudicial. We disagree.

Regarding the first prong of the test, the Government argues that Lamb's possession of narcotics and distribution-related paraphernalia in 2005 was relevant to whether he had the *intent* to distribute the cocaine and marijuana found in his residence in 2000. We agree. "A defendant who enters a not guilty plea makes intent a material issue which imposes a substantial burden on the government to prove intent, which it may prove by qualifying Rule 404(b) evidence absent affirmative steps by the defendant to remove intent as an issue." United States v. Zapata, 139 F.3d 1355, 1358 (11th Cir. 1998). "Where the extrinsic offense is offered to prove intent, its relevance is determined by comparing the defendant's state of mind in perpetrating both the extrinsic and charged offenses." United States v. Dorsey, 819 F.2d 1055, 1059 (11th Cir. 1987). Where the state of mind required for the charged and extrinsic offenses is the same, the first prong of the Rule 404(b) test is satisfied. Id.; United States v. Dickerson, 248 F.3d 1036, 1047 (11th Cir. 2001); Delgado, 56 F.3d at 1365.

In this case, Lamb's charged offenses include, *inter alia*, possession with

16

intent to distribute marijuana and possession with intent to distribute cocaine in 2000. By pleading not guilty, Lamb made his intent a material issue. See Zapata, 139 F.3d at 1358. Lamb's subsequent extrinsic conduct included his possession of marijuana, cocaine, and distribution-related paraphernalia in 2005, resulting in additional charges that Lamb possessed with the intent to distribute marijuana and cocaine. Thus, the charged conduct and the subsequent extrinsic conduct involved the same mental state—intent to distribute marijuana and cocaine. Accordingly, the first prong of the analysis is satisfied.

We also conclude that the second prong is satisfied. Here, the officer who arrested Lamb in 2005 testified that after Lamb consented to a search of his residence, he stated that marijuana and cocaine could be found on his night stand. The officer also testified that upon searching the residence, he found marijuana, cocaine, and distribution-related paraphernalia (e.g., plastic baggies, cutting agents, razor blade, spoon) in the location Lamb described. Based on this testimony, a jury could have found by a preponderance of the evidence that Lamb committed the extrinsic conduct. See Clemons, 32 F.3d at 1508.

Regarding the third prong of the test, "[w]hether the probative value of Rule 404(b) evidence outweighs its prejudicial effect depends upon the circumstances of the extrinsic offense." Dorsey, 819 F.2d at 1062. Factors to be considered include

17

whether it appeared at the commencement of trial that the defendant would contest the issue of intent, the strength of the government's case on the issue of intent, the overall similarity of the charged and extrinsic offenses, and the temporal proximity between the charged and extrinsic offenses. Id.

Here, Lamb's defense rested primarily on his contention that he was merely present at the scene and that he never actually possessed or distributed the narcotics found in 2000. Accordingly, the Government had a strong need for the extrinsic offense evidence to counter Lamb's "mere presence" defense and prove his intent. See Delgado, 56 F.3d 1365. Furthermore, the charged offenses were nearly identical to extrinsic offenses, as both involved possession with the intent to distribute cocaine and marijuana. Moreover, this court's case law contradicts Lamb's assertion that the five-year span between the charged conduct and the 2005 conduct rendered the 2005 conduct too remote to be admitted into evidence. See, e.g., United States v. Calderon, 127 F.3d 1314, 1332 (11th Cir. 1997) (concluding that a six-year span did not render the extrinsic acts too remote for proper consideration); United States v. Lampley, 68 F.3d 1296, 1300 (11th Cir. 1995) (concluding that a fifteen-year span did not render the extrinsic acts too remote for proper consideration); United States v. Pollock, 926 F.2d 1044, 1048 (11th Cir. 1991) (concluding that a five-year span did not render the extrinsic conduct too

18

remote for proper consideration).  Finally, any unfair prejudice possibly caused by admitting the extrinsic act evidence was mitigated by the district court's limiting instruction to the jury.  See United States v. Diaz-Lizaraza, 981 F.2d 1216, 1225 (11th Cir. 1993).  Thus, the probative value of extrinsic act evidence was not substantially outweighed by its undue prejudice.

Because all parts of the Rule 404(b) test are satisfied, we conclude that evidence of the drugs and paraphernalia found in Lamb's apartment during his 2005 arrest was properly admitted to prove his intent in the charged offenses.

### D.  Sentence

Finally, Lamb argues that his sentence should be vacated because the district court erred by sentencing him as a career offender, failing to adequately consider record facts that would have supported a lower sentence, and imposing an unreasonable sentence.  We disagree.

Because Lamb raises these objections to his sentence for the first time on appeal, we review them for plain error.  United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir.), cert. denied, 545 U.S. 1127, 125 S.Ct. 2935, 162 L.Ed.2d 866 (2005).

After United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), sentencing requires two steps.  "First, the district court must consult

19

the Guidelines," which, "at a minimum, obliges the district court to calculate correctly the sentencing range prescribed by the Guidelines." United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005) (citations omitted). Second, the district court must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a). Id. These factors include: the nature and circumstances of the offense, the history and characteristics of the defendant, the seriousness of the offense, promoting respect for the law, providing just punishment for the offense, affording adequate deterrence, the need to protect the public from further crimes of the defendant, the Guidelines range; and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a). "Although sentencing courts must be guided by these factors, nothing in Booker or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." United States v. Thomas, 446 F.3d 1348, 1357 (11th Cir. 2006) (citations omitted).

### 1. Details of Lamb's Sentence

In the presentence investigation report ("PSI"), Lamb was classified as a career offender with a criminal history category of VI and a total offense level of 37, resulting in Guidelines range of 360 months to life imprisonment,with an additional, consecutive, minimum term of five years (60 months) for Count 4

20

(possession of a firearm in furtherance of a drug-trafficking offense). At a status conference following Lamb's conviction, the district court stated that based on Lamb's criminal history, it thought the Guidelines range was unreasonable. Noting that the career offender classification was the result of felonies Lamb committed when he was 17 and 18 years old, the district court stated "I think" a criminal history category of III is more appropriate. The court went on to state "I think" an offense category of 30 is more appropriate, and that this number was reached by "disregarding" the career offender enhancement.

At the sentencing hearing, the Government argued that if the court wanted to impose a sentence below the Guidelines range, it should do so by imposing a downward departure based on the factors set forth in § 3553(a). Stating that the Guidelines range had been correctly calculated in the PSI, the district court continued to express reservations about the reasonableness of a 420-month sentence (the Guidelines minimum). Lamb argued that although the Guidelines range was "technically" correct, the court should use its discretion to disregard the career offender enhancement. After expressly noting that it had considered the § 3553(a) factors, and after discussing how several of those factors applied to Lamb's case, the district court sentenced to Lamb to a total of 181 months imprisonment, consisting of 120 months as to each of Counts 1 and 3 to be served

21

concurrently, 121 months as to each of Counts 2 and 5 to be served concurrently with each other and concurrently with Counts 1 and 3, and 60 months as to Count 4 to be served consecutively to the terms imposed as to Counts 1, 2, 3, and 5.

## 2. Career Offender Enhancement

Lamb contends that during the status conference, the district court had "announced with definiteness" that it would disregard the career offender enhancement included in the PSI. He argues that in failing to disregard the enhancement, the district court erred by receding from its previously-announced position, failing to consider that Lamb's prior felonies occurred while he was a teenager, and failing to consider Lamb's "lengthy period of lawful and gainful employment" during the preceding five years. We disagree.

First, the transcript of the status conference reveals that the district court did *not* announce with definiteness that it would disregard the career offender enhancement. As discussed above, the district court stated "I think" a criminal history category of III and an offense category of 30 (reached by disregarding the enhancement) are more appropriate. In our view, this does not constitute a definitive announcement that the court would disregard the enhancement.

We are also unpersuaded by Lamb's contention that the district court erred in failing to consider Lamb's age when he committed the prior felonies and his

22

subsequent gainful employment.  Again, after <u>Booker</u>, the district court must correctly calculate the Guidelines range, and we review a defendant's ultimate sentence for reasonableness in light of the § 3553(a) factors.  <u>Talley</u>, 431 F.3d 784, 786.  But our reasonableness review does *not* apply to the application of individual Guidelines, nor does it apply to "each individual decision made during the sentencing process."  <u>United States v. Winingear</u>, 422 F.3d 1241, 1244-45 (11th Cir. 2005).  Here, Lamb does not argue that the career offender enhancement either resulted from, or produced, an incorrect application of the Guidelines.  And because we do not review the reasonableness of an *individual* Guidelines application, <u>see</u> <u>id.</u>, Lamb's arguments regarding the factors the district *should have* considered in deciding whether to disregard the enhancement are addressed in our discussion of whether Lamb's ultimate sentence is reasonable.  Accordingly, we hold that the district court did not err in declining to disregard the career offender enhancement.

### 3.  *Consideration of Lamb's Rehabilitation*

Lamb also argues that his sentence should be reversed because the district court focused "solely" on the nature and circumstances of the offense, while giving "no consideration at all" to his personal "history and characteristics" such as his steady and gainful employment.  We disagree.

23

During the sentencing hearing, the district court specifically took note of Lamb's period of employment with the Humane Society. Indeed, the court read excerpts from a letter written by Lamb's supervisor describing Lamb as a well-liked, courteous, caring, and hard-working employee. Noting the seriousness of the charged offenses, however, the court went on to discuss the need for the sentence to, *inter alia*, reflect the seriousness of the offenses, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by Lamb. Because "the weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court," we will not substitute our judgment in weighing the relevant factors. United States v. Williams, 456 F.3d 1353, 1363 (11th Cir. 2006). Accordingly, we reject Lamb's argument.

### *4. Reasonableness of the Sentence*

Finally, Lamb argues that the sentence was excessive "in total" and that the individual sentences imposed on Counts 2, 3, 4, and 5 were unreasonable because the district court made various "errors." As a threshold matter, "[w]e do not apply the reasonableness standard to each individual decision made during the sentencing process; rather, we review the final sentence for reasonableness." Winingear, 422 F.3d at 1245. "[W]e consider the final sentence, *in its entirety*, in light of the

24

§ 3553(a) factors." Thomas, 446 F.3d at 1350-51 (emphasis added); see e.g., United States v. Johnson, 451 F.3d 1239, 1241-42, 1244 (11th Cir.), cert. denied, 127 S.Ct. 462 (2006) (reviewing for reasonableness a 140-month final sentence; not the reasonableness of the sentences imposed for each individual offense). Accordingly, we review Lamb's "final sentence" for reasonableness, and we decline to evaluate each individual sentence imposed on Counts 2 through 5.

Here, the district court adhered to the requirements of Booker in imposing Lamb's sentence. First, the court expressly considered, and properly calculated, Lamb's advisory Guidelines range. Notably, Lamb does not challenge the court's calculation of the Guidelines range. Second, the court specifically stated that it had considered the § 3553(a) factors. And although a sentencing court need not explicitly discuss each of the § 3553(a) factors, Thomas, 446 F.3d at 1357, in this case, the district court discussed several, including Lamb's history and characteristics (including his youth at the time of his prior offenses and his lawful employment with the Humane Society), see 18 U.S.C. § 3553(a)(1), the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, see id. § 3553(a)(2)(A), afford adequate deterrence, see id. § 3553(a)(2)(B), protect the public from future crimes by Lamb, see id. § 3553(a)(2)(C), and the need to avoid unwarranted sentencing disparity among

25

similarly-situated defendants, <u>see</u> <u>id.</u> § 3553(a)(6).  On this record, we cannot say that Lamb's 181-month final sentence was unreasonable under <u>Booker</u>.

## IV.  CONCLUSION

For the foregoing reasons, we **AFFIRM.**