[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11909

_____

D.C. Docket No. 1:18-cr-20473-MGC-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

YAMILET DIAZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 24, 2021)

Before JORDAN, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

Yamilet Diaz appeals her convictions for one count of conspiring to defraud

the United States and four counts of receiving illegal health care kickbacks for

referring individuals to Medicare in violation of 18 U.S.C. § 371 and 42 U.S.C. § 1320a-7b(b)(1)(A).  Following oral argument and a careful review of the parties' briefs and the record, we affirm.

## I

The evidence at trial demonstrated that Ms. Diaz participated in an illicit business arrangement with Suley Cao.  Pursuant to this arrangement, Ms. Diaz referred Medicare beneficiaries to Good Friends Services, Inc., a Medicare-approved home health care provider operated by Ms. Cao.

## A

Rogelio Rodriguez incorporated and owned a company called Caring Nurse and obtained approval to become a Medicare provider.  Mr. Rodriguez paid Cristobal Gonzalez and others to act as patient providers for Caring Nurse, and Mr. Gonzalez steered patients to Caring Nurse in exchange for kickbacks.  Mr. Gonzalez then submitted fake invoices to Caring Nurse for services rendered on behalf of his company, Florida Network Providers (FNP), to cover up the kickbacks.

Ms. Diaz worked with Mr. Gonzalez and was the registered agent, an officer, and a director of FNP, as well as an authorized signer on FNP's bank account.  Mr. Gonzalez later introduced Ms. Diaz to Mr. Rodriguez, and the two worked together. Mr. Rodriguez was subsequently arrested, charged, and convicted of conspiracy to commit Medicare fraud.

After Mr. Rodriguez's arrest, Ms. Diaz contacted Ms. Cao, the owner of a home health care agency called Good Friends, and arranged a meeting with her. At the meeting, Ms. Diaz proposed working with Ms. Cao and steering Medicare beneficiaries to Good Friends for $2,000 per patient. The two agreed to payment by check with an increased rate of $2,200 per patient to account for Ms. Cao not being able to pay with cash. The checks were made out to Consulting Billing Services, a company incorporated by Ms. Diaz. Ms. Diaz and Ms. Cao then implemented their plan. Ms. Cao documented their exchanges and details about the Medicare patients in a ledger.

Ms. Diaz began dating Hector Hernandez in 2011. Through him, Ms. Diaz met Abigail Aguila. After finding out they both had the same type of job, Ms. Diaz eventually introduced Ms. Aguila to Ms. Cao. At the meeting, Ms. Aguila and Ms. Cao agreed to work together, and they discussed Ms. Cao paying Ms. Aguila kickbacks in Ms. Diaz's presence.

**B**

A grand jury returned an indictment against Ms. Diaz on June 5, 2018, charging her with one count of conspiracy to defraud the United States by receiving illegal health care kickbacks in violation of 18 U.S.C. § 371 and four counts of receiving illegal health care kickbacks in violation of 42 U.S.C. § 1320a-7b(b)(1)(A). Ms. Diaz pled not guilty and the case proceeded to trial.

At trial, the jury heard testimony from Stephen Quindoza, an expert witness on Medicare processes; Mr. Rodriguez; Ms. Aguila; Ms. Cao; Mr. Hernandez; Jarett Iliff, an investigator for the Department of Health and Human Services; Precious Sanchez, a forensic accountant; and Ms. Diaz. The jury found Ms. Diaz guilty on all five counts. The district court later sentenced Ms. Diaz to 87 months of imprisonment followed by 36 months of supervised release. This appeal followed.

## II

Ms. Diaz contends that the district court erred when it denied her motion to exclude Rule 404(b) and inextricably intertwined evidence. The district court ruled that evidence of her prior involvement with other home health care agencies was admissible to prove her intent and that it was inextricably intertwined with the charged conduct.

Ms. Diaz argues that the evidence of her prior involvement with other home health care agencies in patient-referral schemes should not have been admitted because it did not satisfy Rule 404(b) or the test for admission of prior acts to prove intent. She claims that the evidence was unfairly prejudicial; that it lacked the factual basis to prove intent; and that it was not inextricably intertwined with the charged conduct. The government responds that the district court did not err because the evidence was intrinsic to the charged conduct, as well as admissible to prove intent under Rule 404(b).

We review rulings on admission of prior bad-act evidence for abuse of discretion. *See United States v. Cooper*, 926 F.3d 718, 733 (11th Cir. 2019). Rule 404(b) generally precludes the admission of evidence "of a crime, wrong, or other act . . . to prove a person's character" or to show that the person acted in conformity with his or her prior act. *See* Fed. R. Evid. 404(b)(1); *United States v. Nerey*, 877 F.3d 956, 974 (11th Cir. 2017). But Rule 404(b) provides several exceptions to the exclusion of such evidence, including for the purpose of proving intent. *See* Fed. R. Evid. 404(b)(2). Additionally, Rule 404(b) does not apply, and the evidence need not meet one of the admissible categories in Rule 404(b)(2), if "it is (1) part of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense." *Nerey*, 877 F.3d at 974 (citing *United States v. Baker*, 432 F.3d 1189, 1205 n.9 (11th Cir. 2005)). Rule 403 gives a district court the discretion to exclude otherwise admissible evidence (including Rule 404 evidence) if its probative value is substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403; *United States v. Shabazz*, 887 F.3d 1204, 1216 (11th Cir. 2018).

In *Nerey*, 877 F.3d at 975, evidence of a defendant's "involvement with other home health care agencies . . . was inextricably intertwined with, and probative of, how [the defendant] became involved with the home health care agencies" at issue.

5

Here, the evidence is almost identical to that in *Nerey*: Ms. Cao testified that Ms. Diaz was referred to her as a result of Ms. Diaz's work recruiting patients for other home health care agencies. The evidence of Ms. Diaz's involvement with other home health care agencies explains how she came to know Ms. Cao and joined the conspiracy she was found guilty of. It was therefore inextricably intertwined and admissible on that basis alone. Ms. Diaz's prior involvement was also highly probative of her intent under Rule 404(b)(2) and was not substantially outweighed by the risk of unfair prejudice. Thus, the district court did not abuse its discretion when it denied her motion to exclude.

### III

Ms. Diaz argues that the district court erred when it denied her motion to dismiss the indictment against her for prejudicial pre-indictment delay. We have previously reviewed the denial such of a motion for abuse of discretion and the underlying factual findings for clear error. *See United States v. Foxman*, 87 F.3d 1220, 1222–23 (11th Cir. 1996). We apply that standard here.

For Ms. Diaz to prove a due process violation from pre-indictment delay, she must show (1) that there was actual prejudice to her defense and (2) that the government's delay was deliberate to gain a tactical advantage. *See United States v. Gouveia*, 467 U.S. 180, 192 (1984). *See also United States v. Thomas*, 62 F.3d 1332, 1339 (11th Cir. 1995). This standard applies even when the government brings

charges within the statute of limitations, as is the case here. *See Gouveia*, 467 U.S. at 192.

Ms. Diaz maintains that she suffered prejudice because the government was able to obtain more evidence against her and secure Ms. Cao as a witness to testify against her at trial. Ms. Diaz claims that the government could have indicted her a year earlier because the indictment of Ms. Cao for related crimes occurred a year earlier than her own indictment, and the evidence brought against her was substantially similar to the evidence used against Ms. Cao. Ms. Diaz also casts doubt on Ms. Cao's discovery of a flash drive after Ms. Cao's guilty plea, claiming that the late discovery was the single most damaging piece of evidence against her at trial.

In response, the government says that the delay was based on legitimate investigatory reasons. One of those reasons was the collection of further evidence against Ms. Diaz, which included securing Ms. Cao's testimony against Ms. Diaz. The government also notes that even if Ms. Diaz is correct that charges could have been filed against her earlier, "prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt." *United States v. Lovasco*, 431 U.S. 783, 791 (1977). Finally, the government rejects Ms. Diaz's argument that collection of further evidence qualifies as prejudice.

Ms. Diaz did not successfully establish that the pre-indictment delay was deliberate or that its purpose was to gain a tactical advantage. She offered only a quote from her own attorney at trial, and the addition of Ms. Cao as a witness for the government, to prove the second prong. The prosecution waiting to secure Ms. Cao as a witness against Ms. Diaz was a valid reason to delay the indictment, as it was trying to bolster its case and wanted to be "completely satisfied that [it] should prosecute and will be able promptly to establish guilt beyond a reasonable doubt." *Lovasco*, 431 U.S. at 795. Ms. Diaz, we note, also made no argument of bad faith on the part of the government.

Because Ms. Diaz failed to prove the second prong, we need not reach the question of whether she suffered prejudice as a result of the delay. *See Thomas*, 62 F.3d at 1339. Thus, the district court did not abuse its discretion by denying Ms. Diaz's motion to dismiss the indictment for pre-indictment delay.

## IV

Ms. Diaz argues that the district court erred when it denied her motion for judgment of acquittal. *See* Fed. R. Crim. P. 29. We review *de novo* the district court's denial of a motion for judgment of acquittal. *See United States v. Browne*, 505 F.3d 1229, 1253 (11th Cir. 2007). In doing so, we view the evidence in the light most favorable to the government and draw all reasonable inferences in favor of the

8

jury's verdict.  *See United States v. Henderson*, 893 F.3d 1338, 1348 (11th Cir. 2018).

Ms. Diaz raises two primary arguments about the evidence presented at trial. First, she claims that the government failed to prove that she knew Medicare was a federal health care plan, and thus failed to prove an essential element of one of the crimes she was accused of.  Second, she claims that the government failed to prove a conspiratorial agreement and only proved a buyer-seller relationship.  She contends that the government's witnesses provided no evidence that she had committed a crime and that their testimony did not include firsthand knowledge or accounts of any wrongdoing.  Ms. Diaz also claims that Ms. Cao's spreadsheet was found 14 months after Ms. Cao pleaded guilty, and casts doubt on the veracity of its contents. And she notes alleged inconsistencies in Ms. Cao's testimony.

In response, the government recounts the testimony of Mr. Rodriguez, Ms. Aguila, and Ms. Cao.  And it describes the documentary evidence of payments by Ms. Cao to Ms. Diaz.

Ms. Diaz's argument that the government failed to prove an essential element is unavailing.  Her claim that the government needed to prove she knew Medicare was a federal health care plan is foreclosed by precedent: "[W]hile the government must prove that the United States was the ultimate target of the conspiracy under the defraud clause of § 371, the government is not required to allege that the United

9

States was the intended victim of a conspiracy under the offense clause of § 371." *United States v. Harmas*, 974 F.2d 1262, 1268 (11th Cir. 1992). Thus, Ms. Diaz's knowledge of Medicare's status as a federal health care plan was not necessary for the jury to convict.

Ms. Diaz's argument that the government failed to prove a conspiratorial agreement also fails. She is correct that, generally, a buyer-seller relationship by itself does not prove conspiracy. *See United States v. Solomon*, 686 F.2d 863, 877 (11th Cir. 1982). What differentiates a mere buyer-seller relationship from a conspiratorial agreement is the "knowledge and understanding of the parties associated with the buying and selling." *Id.* *See also United States v. Mercer*, 165 F.3d 1331, 1335 (11th Cir. 1999).

Here, the parties' knowledge and understanding were sufficient to demonstrate more than a mere buyer-seller relationship. Several of the witnesses at trial testified to Ms. Diaz's knowledge and ongoing involvement. For example, Ms. Aguila testified that Ms. Diaz admitted to "moving patients" for a living and paying beneficiaries to go to specific health agencies. Ms. Aguila also testified that Ms. Diaz introduced Ms. Aguila to Ms. Cao for the purpose of referring patients to Good Friends in exchange for kickbacks. And Ms. Cao testified to meeting with Ms. Diaz in her office, where they discussed and negotiated the parameters of their

arrangement. Simply stated, the parameters here went beyond simple buyer and seller logistics.

The evidence offered at trial was sufficient for a jury to find the existence of a conspiratorial agreement. The district court's denial of Ms. Diaz's motion for judgment of acquittal is therefore affirmed.

V

Finally, Ms. Diaz contests the district court's calculation of her imprisonment range under the advisory Sentencing Guidelines and the overruling of her objections to the presentence investigation report. We review the district court's interpretation of the Sentencing Guidelines *de novo* and the court's factual findings underlying the calculation of the Guidelines range for clear error. *See United States v. Barrington*, 648 F.3d 1178, 1194–95 (11th Cir. 2011). If the record supports the district court's factual findings, there is no clear error. *See United States v. Petrie*, 302 F.3d 1280, 1290 (11th Cir. 2002). "When a defendant challenges one of the factual bases of his sentence as set forth in the PSR, the Government has the burden of establishing the disputed fact by a preponderance of the evidence." *United States v. Lawrence*, 47 F.3d 1559, 1566 (11th Cir. 1995) (citations omitted).

Ms. Diaz made several objections to the PSR, including challenges to the offense conduct in paragraphs 7–19, certain factual statements in the PSR, and the assertion that she made false statements while testifying at trial. She also objected

11

to the following sentencing enhancements:  a 16-level enhancement for the loss amount, a three-level enhancement for her aggravating role pursuant to U.S.S.G. § 3B1.1, and a two-level enhancement for obstruction of justice.  She claims that these errors resulted in a procedurally and substantively unreasonable sentence.

**A**

Ms. Diaz contests the district court's application of a 16-level enhancement under U.S.S.G. §§ 2B1.1(b)(1)(I) and 2B4.1(b)(1)(B) due to the value of the improper benefit conferred.  She disputes the calculation of the loss amount and claims that the government did not satisfy its burden to prove the amount by a preponderance of the evidence.  Further, she argues that the loss amount should have only included the sums Medicare paid to Good Friends, and none of the money it paid to other home health care agencies.  And finally, at oral argument, Ms. Diaz's counsel argued that the amount should only include the amount of money she received as kickbacks.  *See United States v. Medina*, 485 F.3d 1291 (11th Cir. 2007).

In response, the government submits that the district court calculated the proper loss amount—$1,605,927.17—which was the "total amount that Medicare paid to home health agencies for patients Diaz recruited."  Appellee's Br. at 46.  The government also disputes Ms. Diaz's argument that only the payments to Good Friends should count towards the total value.  At oral argument, the government noted that Ms. Diaz had not previously raised her *Medina* argument.

12

The district court found that the government had proven a loss amount of greater than $1,500,000 by a preponderance of the evidence. The district court based the calculation of this figure on payments by Medicare to Good Friends and other home health care agencies. The payments to Good Friends were set out in Government Exhibits 539 and 604, which documented the payments from Medicare and received by Good Friends in Ms. Cao's ledger. The payments made to other home health care agencies were admitted as Government Exhibit A at the sentencing hearing, and Ms. Diaz did not object to the factual basis of this document. Exhibit A documented Medicare payments over the time period that home health care agencies were paying Ms. Diaz. The district court also relied on Government Exhibit 540 to document patients whom Ms. Diaz recruited and who went to other home health care agencies. Ms. Aguila's testimony also supported a finding of Ms. Diaz's receipt of payment from other home health care agencies. Given this evidence, we conclude that the prosecution established the loss amount by a preponderance of the evidence and that the district court's finding was not clearly erroneous.

Under our precedent, payments made to other home health care agencies may be considered as relevant conduct in calculating the loss amount. In *Nerey*, for example, we affirmed the district court's loss calculation in a similar Medicare fraud scheme where the loss calculation included fraudulent payments by Medicare to different home health care agencies. *See Nerey*, 877 F.3d at 977–78. As here, those

13

payments resulted from the defendant's referrals to other home health care agencies. *See id.* Ms. Diaz has identified no contradictory authority on this point.

Good Friends was not the only home health care agency to receive Medicare payments for Ms. Diaz's referrals, and under *Nerey*, the amount paid to those agencies could be properly included in the loss amount calculation. The district court did not err in including the payments to other home health care agencies.

Ms. Diaz's argument that only the kickback amounts, rather than the full amounts paid by Medicare, should be considered in the loss calculation was waived. Ms. Diaz did not make this argument in her initial brief or in her reply brief, and "a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004). Raising the argument at oral argument for the first time was too late. *See Mesa Air Group, Inc. v. Delta Air Lines, Inc.*, 573 F.3d 1124, 1130 n.7 (11th Cir. 2009).

**B**

Ms. Diaz argues that the district court improperly imposed a three-level enhancement pursuant to U.S.S.G. § 3B1.1(b). According to the PSR, Ms. Diaz "was a manager or supervisor in a criminal activity involving five or more participants." PSR ¶ 31. Ms. Diaz disputes that the government presented proof that satisfies the preponderance standard, and she claims that she only played a minor

14

role. Ms. Diaz's argument concerns only whether or not the facts underlying the enhancement were properly found by the district court, so we review for clear error. *See Barrington*, 648 F.3d at 1194–95.

The district court found that Ms. Diaz exercised decision-making authority, dictated the kickback amounts, and recruited and coached her beneficiary accomplices. The district court relied upon Ms. Aguila's testimony, Ms. Cao's testimony, and Ms. Cao's ledger to find that the government had met its burden. Ms. Aguila testified about Ms. Diaz's payments to patients to go to home health care agencies for services, and both Ms. Aguila and Ms. Cao testified to Ms. Diaz directing the patients to clinics to receive prescriptions. Ms. Cao's ledger also established Ms. Diaz's recruitment of 150 Medicare beneficiaries. On this record, the district court's aggravating role determination was not clearly erroneous.

## C

Ms. Diaz also challenges the two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1. Ms. Diaz points to alleged discrepancies in the testimony of Ms. Aguila and Ms. Cao that she claims undermine the enhancement.

Because Ms. Diaz again only challenges the facts underlying the district court's application of the enhancement, we review for clear error. *See Barrington*, 648 F.3d at 1194–95. The district court found that Ms. Diaz committed perjury at trial by a preponderance of the evidence. For example, Ms. Diaz testified that Good

15

Friends only paid her shell corporation for transporting patients. But the evidence at trial, including testimony from Ms. Cao and Ms. Aguila, contradicted Ms. Diaz's testimony. The record supports the obstruction enhancement, and the district court's ruling was not clearly erroneous.

## VI

Ms. Diaz's conviction and sentence are affirmed.

**AFFIRMED.**